David R. BLAKE, an individual, and Ever-
Level Glides, Inc., a corporation,
Plaintiffs,

v.

The BASSICK COMPANY, a corporation,
and Stewart-Warner Corporation, a
corporation, Defendants.

No. 62 C 694.

United States District Court
N. D. Illinois, E. D.

June 30, 1965.

Raymond L. Greist and John D. Dewey, Chicago, Ill., for plaintiffs.

George B. Christensen and Augustus G. Douvas, Chicago, Ill., for defendants.

ROBSON, District Judge.

The court heretofore on November 5, 1963, denied plaintiffs' Patent No. 2,-704,663 was invalid due to their filing an application for a patent abroad prior to the expiration of six months from the filing of their application in the United States without a license from the Commissioner of Patents to do so, or that the United States patent was invalid because such a license did issue retroactively some eight years after the patent was issued.

In the interim, several decisions have been announced which bear upon this subject. They are the basis for the defendants' April 29, 1965, renewed motion for summary judgment. The decisions are Beckman Instruments, Inc.,

et al. v. Coleman Instruments, Inc., 338 F.2d 573 (7th Cir. 1964); Minnesota Mining and Manufacturing Company v. Norton Company et al., 144 U.S.P.Q. 272; Minnesota Mining and Manufacturing Company v. Norton Company et al., D.C., 240 F.Supp. 150, and In re Rinker and Duva, 145 U.S.P.Q. 156.

Plaintiffs most recently counter, by letter, in opposition to the renewed motion, with the citation of the two very recent Engelhard Industries, Inc. v. Sel-Rex Corporation cases (145 U.S.P.Q. 319) decided on January 11 and April 12, 1965.

The Beckman case, supra, was decided by this Circuit's Court of Appeals. It held that where "foreign applications [were] filed within six months after the filing of the second application, without obtaining a license, [that fact] invalidated the patent." In that case, the second application was a "continuation-in-part" of the first application which was rejected by the patent examiner as being inoperative. The court stated that the crucial question in that case was whether the six months' waiting period for the filing of the foreign applications commenced to run at the time of filing of the first application which was abandoned, or the second application, upon which the patent in suit issued. The plaintiffs' main argument was that both applications were for the same invention, and the second, being a continuation-in-part, is entitled to the same filing date as the first. But the Court of Appeals pointed out that the inventor's deposition, and more particularly the oath he made in support of his second application, refuted that contention. He said that the subject matter disclosed in the second application was not disclosed in the prior application and that no application for patent on the invention of the second application had been filed abroad, except in Great Britain and Western Germany. The Court of Appeals said, 338 F.2d at 576:

"Thus, in this oath he distinguishes his second invention from the first with the statement that the latter contained subject matter not disclosed in the former. That the examiner recognized the distinction as material is shown from the fact that he refused a patent on the first application but allowed it on the second."

If the invalidity of the patent were absolute, under the statute, for premature filing of a foreign application there would have been no need for the Court of Appeals to discuss or take into account the factor of whether the later United States application was for the same invention as the first.

In the instant case, both applications, which were copending, were allegedly for the same invention, and also for the same invention as covered by the British application. The truth of this fact was emphasized by the security officer's answer to the first request for a retroactive license. Quotations from the respective statements of the invention showing the similarity of subject matter were given in this court's earlier ruling denying the previous motion for summary judgment.

█ The court therefore feels that this is a vital distinguishing feature between the Beckman case and the instant one; here both applications allegedly covered the *same* invention, and the patentee is therefore entitled to date the six months' period from the filing of the first rather than the second application.

The decision in In re Rinker and Duva, supra, is not decisive inasmuch as the Commissioner's decision simply states the practice of the Patent Office to be to grant retroactive licenses under 35 U.S.C. § 184 after the granting of patents where it is shown that filing abroad resulted from inadvertence and that diligence was exercised in applying for a retroactive license. It was stated there was nothing in either Section 184 or 185 to restrict the time at which the Commissioner might grant a retroactive license.

Another decision relied on by defendants is the case of Minnesota Mining and Manufacturing Company v. Norton Com-

pany et al., supra, decided January 4, 1965, by the District Court in Ohio, which court stated it followed this circuit's Beckman case, discussed above. In this case, the United States application was filed in October, 1958, the request for a license to file in a foreign country was made January 12, 1959, and before the issuance of a nonretroactive license the inventor filed in Australia for a patent on January 20, 1959. The applicant also filed other untimely applications abroad. The court discussed the purpose of the statute forbidding disclosure of an invention abroad within six months of a domestic application without license from the Commissioner to do so, and concluded that the motion for summary judgment of invalidity of the patent for the lack of a timely license should be granted.

The other 3M decision, found in D.C., 240 F.Supp. 150, is, without question, in point. However, this court does not agree with that court's construction of the statute. The court there held that where "the patent did issue without a license" it must "be deemed invalid *ab initio*," and the "Commissioner is powerless to affect the validity or invalidity of a patent after it has egressed from administrative channels," in the absence of specific Congressional authorization. This court finds that express Congressional authorization in Section 184 gives the right to grant retroactive licenses, and Section 185 refers to the license prescribed in Section 184. One such license prescribed by Section 184 is the retroactive license.

This court's conclusion finds support in the decisions of the District Court of New Jersey in Engelhard Industries, Inc. v. Sel-Rex Corporation, supra, holding that although the foreign application was filed less than six months after the filing of the application in the United States for the same invention, and although the United States patent issued before the patentee sought the license under Section 184 to file abroad, the granting of a retroactive license by the Commissioner of Patents under Section 184 validates

the patent, and further, that the validated patent is not invalid under Section 185. In colloquy at one point, the court said, at 322:

"It seems to me that Congress wouldn't deliberately proceed to grant the right to apply for a license retroactively and then say it would be of no effect."

As an exhibit, the plaintiffs have filed the "Hearings before the Committee on the Judiciary Subcommittee Number 4" in respect to H.R. 6389 wherein statements were made by Captain George N. Robillard, Assistant Chief for the Patents and Patent Counsel for the Navy Department, Department of Defense. At one point, he said:

" * * * This Act [of August 8, 1946, 60 Stat. 943, Sec. 6] provides that if the Commissioner of Patents subsequently authorizes the filing of an application in a foreign country, or in effect ratifies an earlier unauthorized filing, the person shall not be barred from receiving a patent nor shall the patent be invalid."

Further, Captain Robillard said:

"The next amendment is to provide that the Commissioner of Patents if, in his discretion, he has decided that a case filed abroad was not in violation of the act, then he has authority not to hold the case abandoned or the patent that was issued invalid which brings into H.R. 6389 the Act of 8th August, 1946, which was for that specific purpose."

It is apparent that those concerned with explaining the purpose of the Act felt that the retroactive license could be given to prevent an issued patent's being held invalid where the failure previously to procure the license from the Commissioner before filing abroad was innocent.

Plaintiffs cite the two rulings in Engelhard Industries, Inc. v. Sel-Rex Corporation, 145 U.S.P.Q. 319–326, the case quoted from supra. The one side had contended that Section 185 was man-

datory and a defect thereunder could not be cured by a retroactive license—that if the patent had issued its invalidity could not be cured by a retroactive license. The court said, at 324:

"I don't agree with your construction. I think that the application, the retroactive application, validates the patent and the patent is valid. I shall so rule and deny your motion."

■■ While it must be conceded that there is some ambiguity in Congressional intent in providing in Section 184 for a retroactive license and in providing in Section 185 that notwithstanding any other statutory provision a patent not supported by a Section 184 license is invalid, construing both sections to give effect to them both, the court concludes that Section 185 means that when a patent requires a license for validity, it may be a retroactive license, such as outlined in Section 184.

The renewed motion for summary judgment is denied.